KELLY, Circuit Judge, dissenting.
 

 I agree that the driver of the Tornado bus willingly gave Corporal Goodman permission to search the bus for contraband. When Goodman looked in the luggage compartment and noted one bag separated from the others and without a visible name tag, he assumed-without any further inquiry-that the bag was abandoned, thereby giving him the right to search.
 
 Cf.
 

 Sanders
 
 ,
 
 130 F.3d at 1317
 
 . But Goodman made no attempt to discover the owner of the bag-which did, in fact, have a name tag attached to it-and his assumption was not reasonable under the circumstances. Thus, I agree with the district court that this was an unlawful search.
 

 Tuton argues that, as a result of this unlawful search, any evidence seized from the bag must be suppressed. This is so, he maintains, because "the exclusionary rule reaches not only primary evidence obtained as a direct result of an illegal search or seizure, but also evidence later discovered and found to be derivative of an illegality or fruit of the poisonous tree."
 
 Segura
 
 ,
 
 468 U.S. at 804
 
 ,
 
 104 S.Ct. 3380
 
 (cleaned up). Nonetheless, the district court applied the independent source doctrine,
 
 see
 

 Silverthorne Lumber Co. v. United States
 
 ,
 
 251 U.S. 385
 
 , 392,
 
 40 S.Ct. 182
 
 ,
 
 64 L.Ed. 319
 
 (1920), and concluded that "Hemi's sniff and subsequent alert was unaffected by th[is] previous unlawful search." This conclusion was based in large part on Goodman's testimony that he would have called for a canine unit even if he had not found the false bottom in Tuton's bag. Even if the district court did credit Goodman's testimony,
 
 [4]
 
 however, Goodman did not call for the canine unit until
 
 after
 
 he reached in the bag, i.e., after the Fourth Amendment violation had already occurred. Under these circumstances, when his decision was necessarily informed by the knowledge he had obtained through the initial search, Goodman's after-the-fact, hypothetical assertion is insufficient to purge the taint.
 
 [5]
 

 I also disagree that Hemi's "profound alert" provided Goodman with independent probable cause to search all the bags located in the luggage compartment of the bus. "The question-similar to every inquiry into probable cause-is whether all the facts surrounding a dog's alert, viewed through the lens of common sense, would make a reasonably prudent person think that a search would reveal contraband or evidence of a crime."
 
 Harris
 
 ,
 
 568 U.S. at 248
 
 ,
 
 133 S.Ct. 1050
 
 . I agree with the court that, under our precedent in
 
 Holleman
 
 , a dog need not give a so-called "final indication" in order to establish probable cause in every case.
 
 [6]
 
 But
 
 Holleman
 
 does not establish that an alert, in the absence of a
 final indication, will always satisfy the probable cause requirement.
 
 743 F.3d at 1156-57
 
 . Instead, we must look at the facts in each case to make that determination.
 

 In
 
 Holleman
 
 , Henri, the drug dog, was directed to sniff the exterior of a truck owned by Holleman, the defendant.
 

 Id.
 

 at 1154
 
 . Henri alerted to the outside of Holleman's truck twice, but did not give a final indication of where on the outside of the truck the odor was strongest.
 

 Id.
 

 We held that Henri's "full alert"-as compared with the mere "interest" shown by a drug dog in
 
 United States v. Jacobs
 
 ,
 
 986 F.2d 1231
 
 , 1233 (8th Cir. 1993) -was sufficient to establish probable cause to search Holleman's truck.
 
 Holleman
 
 ,
 
 743 F.3d at 1156-57
 
 . But, here, Hemi did not sniff the outside of a personal vehicle. Rather, Hemi had complete access to the entire inside of the luggage compartment of a commercial bus containing bags owned by multiple travelers, each with his or her own individual, reasonable expectation of privacy. Inside that compartment were seven bags. And yet, even when he was allowed to sniff each of them individually, Hemi showed no interest in any of the bags. Instead, he returned repeatedly to the back wall of the luggage compartment. Of course, as the government witnesses posited, it is possible that Hemi was overwhelmed by the odor because he was operating in an unfamiliar environment. But that possibility undermines, rather than enhances, the reliability of Hemi's alert on any particular spot. In light of Hemi's alert to the luggage compartment, his disinterest in the bags, and his strong interest in the compartment's rear wall, it is my view that Goodman lacked probable cause to conduct a search of each individual piece of luggage in the compartment.
 
 [7]
 

 For these reasons, I respectfully dissent.
 

 The court states that the district court "necessarily credited Goodman's testimony" based on the ultimate conclusion it reached, but the district court made no explicit credibility determination.
 

 The district court concluded, in the alternative, that "any possible causal connection between the unlawful search and the discovery of the cocaine is so attenuated that any taint of the unlawful search is purged."
 
 See
 

 Hamilton v. Nix
 
 ,
 
 809 F.2d 463
 
 , 465-66 (8th Cir. 1987) (en banc) (citing
 
 United States v. Ceccolini
 
 ,
 
 435 U.S. 268
 
 , 273-80,
 
 98 S.Ct. 1054
 
 ,
 
 55 L.Ed.2d 268
 
 (1978) ). The district court did not provide further explanation, but I see no attenuation under this set of facts that is sufficient to purge the taint.
 

 But cf.
 

 United States v. Heir
 
 ,
 
 107 F.Supp.2d 1088
 
 , 1091 (D. Neb. 2000) (finding a lack of probable cause where a drug dog exhibited "subtle" alert behavior-akin to the court's description of a "normal alert" in this case-that "might only be recognized by" a person familiar with that particular dog).
 

 And while the court is correct that "[t]he Fourth Amendment probable cause inquiry is always fact specific," its dismissal of the "legitimate horrible" wherein a dog's "general alert" to the entire luggage compartment of a commercial vehicle with hundreds of bags would be used to "justify a warrantless search of every bag" does not strike me as more than a stone's throw down the road. Even if we stretched to assume that Hemi's "general alert" constituted sufficient proof that 1 out of 7 of the bags contained drugs, it does not seem obvious to me that an officer is justified to search each bag based on the approximately 14 percent chance that that bag is the one that contains contraband.